**BLACK**
v.
**LOCKHART, Collector of Internal Revenue.**
No. 14913.

United States Court of Appeals,
Eighth Circuit.

Jan. 28, 1954.

Rehearing Denied Feb. 25, 1954.

Albert Thomson, Kansas City, Mo. (Davis, Thomson, Van Dyke & Fairchild, Kansas City, Mo., on the brief), for appellant.

C. Moxley Featherston, Special Asst. to the Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Special Asst. to the Atty. Gen., Edward L. Scheufler, U. S. Atty., and Horace Warren Kimbrell, Asst. U. S. Atty., Washington, D. C., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment dismissing appellant's action by which she sought to recover judgment for taxes erroneously collected from her for the taxable year 1949. Appellant is the duly appointed, qualified and acting administratrix of the estate of her deceased husband, Ernest B. Black, while the appellee is the Collector of Internal Revenue for the Sixth District of Missouri. The parties will hereinafter be referred to as they were designated in the trial court.

Plaintiff's husband and N. T. Veatch, Jr., had for many years been associated together either as partners or as employer and employee. They were engineers and in the course of their concerted activities, on January 1, 1937, they entered into a written partnership agreement under which they continued to furnish professional engineering services to various public corporations, including political subdivisions and utility com-

panies throughout the United States. On July 4, 1949, Ernest B. Black, plaintiff's intestate, died, necessitating a winding up of the partnership business. In 1949 plaintiff received in her representative capacity certain funds in the course of winding up the affairs of the partnership and the present controversy grows out of the contention on the part of the government that the funds so received were income to the estate of Ernest B. Black, deceased, whereas she contends that they were a part of the purchase price paid her by the surviving partner. The partnership employed the completed contract method of accounting by which all fees and the payment of all expenses incident to any particular job under any particular contract were accumulated until all the work under that particular contract and project had been completed, and all direct expenses, such as salaries, expenses of employees, etc., directly attributable to such job were charged thereto at completion in order that the exact amount of profit might be ascertained at the completion of any contract.

The contract is a very lengthy one containing provisions relative to many contingencies. Paragraph VIII which seems to be of prime importance so far as the issues here involved are concerned provides as follows:

"1. If either party shall die or be adjudicated bankrupt, or insolvent, or take proceedings for liquidation by arrangement or composition with his creditors, the partnership shall thereupon determine as to him, and he or his executors, administrators or assigns, as the case may be, shall have no interest in common with the surviving or other partner or partners in the property of the partnership, but shall be considered in equity as a vendor to the surviving partner for the share in the partnership of the deceased or bankrupt or liquidating or compounding partner as and from the date of his death, or bankruptcy, or insolvency, or of his having compounded as aforesaid, for the price and on the terms to be arrived at under the provisions hereinafter contained.

"2. The method to be used in arriving at the amount due the retiring partner, or his administrators, executors, or assigns, shall be based upon the value of that partner's interest as shown by the books of the partnership as of the effective date of the dissolution, with the following exceptions:

"(a) In figuring the value of the interest of said partner so retiring, the uncompleted contracts shall be handled by the following method:

"By carrying the contracts then held by the partnership to completion so as to arrive at the exact amount of the total fees, and the total direct charges on said contracts, and the consequent loss or profit to be derived therefrom. In determining the amount of the total fees and total direct charges on such contracts, there shall be charged to such contracts a fair proportion of the office overhead during the period of completion based upon the percentage of total office overhead incurred on both old and new contracts which the direct cost of old contracts bears to the direct cost of all contracts handled by the office subsequent to the effective date. There shall be included in the overhead the proportionate share of a monthly salary of the surviving partner not to exceed the last agreed to between the parties as a monthly drawing account.

"(b) Partnership insurance shall be taken into consideration as heretofore set forth.

"(c) All moneys received from charged off accounts, plan deposits forfeited, and other undisclosed assets, shall, when received, be divided equally between the parties.

"(d) Unsecured liabilities and losses on book accounts ascertained after the effective date to be deducted."

Paragraph IX in substance provides that upon retirement (the same would apply in case of death) of a partner, the books were to be closed in the manner provided in the contract and any new

**310**

business undertaken by the surviving partner was to be recorded in a separate set of books as his individual business; each six months a written accounting was to be had and the surviving partner required to pay the amount as shown by the books of the company as due the retiring partner, less the sum of $2500.-00, and the final accounting made of the entire interest of the retiring partner within thirty days after the last contract uncompleted at the effective date shall be completed. There was paid to plaintiff by Veatch, the surviving partner, the sum of $214,068.13, representing one-half of the net income arising from the completion of the contracts subsequent to the death of Mr. Black. Plaintiff in her representative capacity filed an income tax return for the year 1949 showing no income. Upon audit the Collector of Internal Revenue determined that the above mentioned amount received by her as representing one-half of the net income arising from completing certain contracts subsequent to the death of Mr. Black constituted income of the decedent's estate and assessed the estate with an income tax of $21,577.38, including interest. Plaintiff paid the tax as so assessed and thereupon brought the present action to recover the amount so paid, contending that it had been erroneously assessed and collected.

Plaintiff contends here, as she did in the trial court, that the amount received by her from the surviving partner, N. T. Veatch, Jr., was not income for the year 1949 but was paid to her in her representative capacity as part of the purchase price of her deceased husband's share of the partnership property.

This contract has already been considered and construed by a number of courts. In the course of winding up the business of the partnership some differences in opinion arose between Mr. Veatch, the surviving partner, and Mrs. Black, the legal representative of her deceased husband, as to certain matters of accounting, and Mr. Veatch brought an action in the Circuit Court of Jackson County, Missouri, against Mrs. Black as Administratrix of her deceased husband's estate, seeking a declaratory judgment. It was there, as here, contended by Mrs. Black that the partnership agreement provided for a sale of the interest of the deceased partner to the surviving partner on the death of either of the parties. On trial the court in disposing of this contention said:

"The partnership agreement dated January 1, 1937 provides for the liquidation of the partnership affairs upon the death of one partner and not for the sale of an interest in the partnership by the estate of the deceased partner to the survivor, and the sums paid and payable to defendant under such agreement are, in fact, a distribution of income accruing from the performance of the contracts held by the partnership prior to the death of E. B. Black and do not represent payments by plaintiff as the purchase price of an interest in the partnership or of any other asset of property."

The case was appealed to the Supreme Court of Missouri where Mrs. Black renewed her contention that the partnership contract provided for a sale of the deceased partner's interest in the partnership property to the surviving partner. The Supreme Court, however, affirmed the decision of the trial court and in the course of its opinion touching this question said:

"What could the purchasing partner gain, if anything, under the uncompleted contracts provisions over a liquidation upon in good faith completing the uncompleted contracts and paying the retiring partner one-half of the earnings as if he continued a partner? We conclude, as did the trial court, the partners intended a distribution to the deceased partner's estate of earnings on partnership contracts completed after death the same as prior to dissolution and not a sale of earnings for a distributive share; but in either event the surviving partner under the agreement was to have an interest as owner only to his distributive

share of the earnings on the uncompleted partnership contracts." Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, 509.

The State court action, it will be observed, was in effect between the parties to the contract, and as between the surviving partner and the legal representative of the deceased partner the decision of the Supreme Court became final and conclusive. In the instant case the trial court approved and followed the decision of the Supreme Court of Missouri, not on the theory of res judicata, but as a correct determination of the question presented and here involved.

Since the decision of the trial court in the instant case, the Tax Court of the United States has had occasion to construe this particular provision of the contract in a case entitled Veatch v. Commissioner of Internal Revenue, in which the opinion was handed down November 30, 1953, —— T.C. ——. That court, after quoting paragraphs VIII and IX of the contract, observed inter alia:

"No capital was ever contributed to the partnership either by Black or by petitioner. The only accounts they had with the partnership represented their share of the profits, which were withdrawn, and sometimes overdrawn, from time to time. The partnership had no tangible assets other than furniture, fixtures and tools which were the equipment of the business. There was never any good will carried on the books and the partners did not consider that the partnership had any good will."

Referring to the contention that the contract provided for a sale of the interest of the deceased partner to the surviving partner rather than a dissolution of the partnership, the court said:

"From the entire record we can only conclude that under the partnership agreement of Black & Veatch it was the partners' intention that the partnership be liquidated upon the death of one partner, and they did not intend a sale as determined by respondent. This was also the conclusion of the Supreme Court of Missouri and the trial court of that state when they construed the partnership agreement. The issues before the Missouri state courts did not involve any questions of tax liability, but merely required a determination of property rights stemming from the partnership agreement. The sum paid to the estate by petitioner was a distribution of partnership income accruing from the completion of contracts held by the partnership at the time of Black's death."

A somewhat similar situation was considered by the Tax Court in McAffee v. Commissioner, 9 T.C. 720. In that case the court considered a contract for winding up the affairs of a law partnership. It was contended that the contract provided for a sale but the Tax Court held that the intention of the parties was to dissolve the partnership and that the payments received on dissolution were in fact income and not purchase price. In Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 696, 79 L.Ed. 1421, the Supreme Court considered a partnership agreement which among other things provided that in the event a partner died the survivors should continue the business for one year subsequent to his death and the estate should " 'receive the same interests, or participate in the losses to the same extent,' as the deceased partner would, if living, 'based on the usual method of ascertaining what the said profits or losses would be. * * * Or the estate of the deceased partner shall have the option of withdrawing his interest from the firm within thirty days after the probate of will * * * and all adjustments of profits or losses shall be made as of the date of such withdrawal.' " It was claimed that the amount received from the partnership subsequent to the death of one of the partners was not income. Addressing itself to this contention, the court among other things said:

"Here, however, the survivors have purchased nothing belonging to the decedent, who had made no investment in the business and owned no tangible property connected with it."

**312**

The decision of the trial court in the instant case is in accord with persuasive, if not controlling, precedents. Being of the view that the contentions of the plaintiff are without merit, the judgment appealed from is affirmed.