141 So.2d 196

**STATE of Alabama**

v.

**FIRST NATIONAL BANK OF AUBURN.**

3 Div. 888.

Supreme Court of Alabama.

May 10, 1962

M. R. Nachman, Jr., Montgomery, for appellee.

MacDonald Gallion, Atty. Gen., Guy Sparks, Sp. Asst. Atty. Gen., and Jas. R. Payne, Asst. Atty. Gen., for appellant.

GOODWYN, Justice.

Appellee, the First National Bank of Auburn, appealed to the circuit court of Montgomery County, in equity, from a final excise tax assessment made by the State on March 20, 1959. After an oral hearing, the trial court rendered a decree invalidating the assessment. The State brings this appeal from that decree.

The excise tax involved is that prescribed for financial institutions under the provisions of Code 1940, Tit. 51, § 425 et seq., as amended.

For the tax year 1953 (calendar year 1952), the State made a final assessment of excise tax against appellee on July 2, 1953, in the amount of $539.13, being figured at the rate of 6% on a net income for the year of $8,985.51. Appellee paid this tax on July 13, 1953. In the tax years 1954 and 1955 (calendar years 1953 and 1954) appellee had a net operating loss of $162,-498.49. Accordingly, no excise tax was due for those two years.

Section 425, Tit. 51, Code 1940, as amended, was further amended by Act No. 568, appvd. Sept. 9, 1955, Acts 1955, Vol. II, p. 1232, by adding thereto the following additional deduction in arriving at a taxpayer's "net income", on which the excise tax is based, viz.:

"(b) * * * (11) All financial institutions shall be allowed to carry back their net operating losses to apply as a deduction against prior income, and to deduct from succeeding years' income the excess loss, if any, that is not absorbed thereby. For purposes of this subdivision, the term 'net operating loss' means the excess of allowable deductions over gross income. No net operating loss deduction (arising out of a net loss in an earlier or later year) shall be allowed in computing a net operating loss. Casualty losses and losses arising from theft, fraud, and embezzlement, however, shall be deductible in computing the net operating loss. A net operating loss for a taxable year ending after the year 1952 may be carried back two years, then forward to the eight succeeding taxable years in chronological order; provided, that no part of the net operating loss which has been previously applied against income for one taxable year may be applied as a carryback or carryover to another taxable year. The net operating loss deduction allowed herein shall be the sum of the carrybacks and carryovers applicable to the taxable year[s]. A successor financial institution shall be allowed to carry over and deduct from succeeding years' income, in the manner prescribed herein, the net operating loss of its predecessor. Any amount refunded under the provisions of this subdivision shall be considered as expenses of administration for the year in which the refund is made. [Refunds under the provisions of this subdivision shall be paid from the current year's receipts.] * * *"

The portions in brackets are changes wrought by amendatory Act No. 639, appvd. Sept. 20, 1957, Acts 1957, Vol. II, p. 964. The bracketed sentence was substituted for the last sentence.

It is to be noted that Act No. 568 did not become effective until more than two years after the final excise tax assessment of July 2, 1953.

On December 8, 1955, three months after Act No. 568 became effective, appellee applied to the State Department of Revenue for a refund of the excise tax of $539.13 paid by it for the tax year 1953. The basis for the refund was stated in the application as follows:

"Net Operating Loss of $125,793.50 for the Calendar Year 1954, plus unused Net Operating Loss of $25,814.00 for the Calendar Year 1953, is carried back to apply against income in the amount of $8,985.51 for the Calendar Year 1952, resulting in an overpayment of the entire amount of tax paid for 1952, namely $539.13. This refund

claim is based on Act #568 of the 1955 Legislature."

The refund was rejected on January 6, 1958.

Of the total net operating loss of $162,-498.49 incurred in the tax years 1954 and 1955, the sum of $63,548.17 was included as a deduction for the tax year 1956, $61,367.-04 for the tax year 1957 and $37,583.28 for the tax year 1958. Of the claimed deduction for 1958, the sum of $8,985.51 was disallowed and an additional excise tax assessment was made against appellee in the amount of $539.13, being 6% of the disallowed $8,985.51. The appropriateness of this additional assessment is the question presented in this case. Our conclusion is that the trial court did not err in setting aside the assessment.

■ It seems to be the State's position that, under the provisions of Act No. 568, a part of appellee's operating loss should have been applied first as a carry-back to the tax year 1953 in an amount ($8,985.51) sufficient to offset the same amount of net income for that year; that, since such amount was not applied to the net income of that year, it has been lost to appellee as a deduction against its net operating losses, either as a carry-back or a carry-over. The basis for this contention is that the excise tax assessment for the tax year 1953 was made final on July 2, 1953; that appellee did not take an appeal therefrom within the required thirty days (Code 1940, Tit. 51, § 140); and that, accordingly, there is no way of crediting a part of the net operating loss against the net income for that year since the amount of tax liability for that tax year has become conclusively fixed and is not subject to being remitted, released, or in any way diminished (citing Constitution 1901, § 100). We are unable to follow this contention. Let us see what the practical result would be. Suppose an excise tax assessment is made final in a tax year showing a net income. The taxpayer does not contest the assessment and pays it. In that situation, there would be

no occasion at all for the taxpayer to take an appeal within the required thirty days. The next tax year, the taxpayer sustains a net operating loss (determined after the time for appealing the prior year's assessment has expired). The taxpayer, then, would have no recourse by appeal for applying the net operating loss as a deduction against the preceding year's net income. To say that the taxpayer could get relief only by applying such loss in the process of assessing the excise tax for the preceding year would impute to the legislature an intent to authorize a loss deduction by carrying it back and, at the same time, to effectively thwart the obtainment of such relief. Act No. 568 does not justify such a construction. It seems clear to us that the last sentence of the portion of the Act set out above discloses a legislative intent to authorize relief to the taxpayer by way of refund. And that is the way appellee first attempted to get relief. Its application for refund, filed on December 8, 1955, and rejected on January 6, 1958, was well within the three years allowed for applying for a refund. See: Code 1940, Tit. 51, § 410, as amended by Act No. 826, appvd. Sept. 12, 1951, Acts 1950–51, Vol. II, p. 1457, and § 430.

This brings us to the question whether, in view of the rejection of appellee's application for refund (assuming that Act No. 568 requires a carry-back of a net operating loss before applying such loss as a carry-over to succeeding years), it was appropriate to apply the loss of $8,985.51 as a deduction against net income for the tax year here involved.

■ Appellee unquestionably is entitled either to a refund of the excise tax paid in the amount of $539.13 for the tax year 1953, by reason of a carry-back to that tax year of a loss in the amount of $8,985.51, or to a credit of said loss against its net income for the tax year here involved as a carry-over to that year. In either event, the same amount of excise tax is involved. Since the State has rejected appellee's application for a refund, by way of a carry-

back, what ground is there for denying appellee relief by carrying the loss over to the tax year here involved? Aside from any other consideration, to deny such relief would be unjust. As said in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421: "If that which the sovereign retains was unjustly taken in violation of its own statute, the withholding is wrongful. Restitution is owed the taxpayer." Cf. Crossett Lumber Co. v. United States, (C.C.A. 8) 87 F.2d 930, 932–933, 109 A.L.R. 1348.

The decree appealed from is due to be affirmed.

Affirmed.

SIMPSON, MERRILL and COLEMAN, JJ., concur.