In the Matter of the Tax Indebtedness of Dell W. CARLSON.

In the Matter of the Tax Indebtedness of Robert TORRES.

In the Matter of the Tax Indebtedness of CBM, INC. t/a Continental Business Machines.

In the Matter of the Tax Indebtedness of Roger A. GROVER.

Civ. A. Nos. 77 M 558 to 77 M 561.

United States District Court, D. Colorado.

July 12, 1977.

Cathlin Donnell, U. S. Atty., Denver, Colo. (Interim), and Lena A. Wilson, Asst. U. S. Atty., Denver, Colo., for petitioners.

## MEMORANDUM AND ORDER

MATSCH, District Judge.

The United States Attorney has submitted four applications for the entry of *ex parte* orders granting revenue officers of the Internal Revenue Service general authority to enter private property for the purpose of searching for and seizing property found therein for the administrative collection of taxes. In each case there is an affidavit of a revenue officer informing that a notice and demand was made pursuant to Sections 6201, 6203 and 6303 of the Internal Revenue Code; that liens have arisen under Sections 6321 and 6322; and that seizure and sale of property and prop-

erty rights are authorized by Section 6331 of the Code. Three of the applications ask to enter the non-public portions of business premises for the collection of employer taxes and the fourth asks to enter a private residence to collect personal income tax.

In considering these applications, I have reviewed a memorandum submitted by the United States Attorney in support of such an application in the *Matter of the Tax Indebtedness of Ichiban at Vail, Inc.*, Civil No. 77–X–54, pending before another judge of this Court. The government's position is that the requested orders are both required and authorized by the decision of the Supreme Court of the United States in *G. M. Leasing Corp. v. United States*, 429 U.S. 338, 97 S.Ct. 619, 50 L.Ed.2d 530 (1977). There, the Court held that a taxpayer's Fourth Amendment rights were violated by a warrantless entry into business premises for collection of a jeopardy assessment. The Court noted,

> Indeed, one of the primary evils intended to be eliminated by the Fourth Amendment was the massive intrusion on privacy undertaken in the collection of taxes pursuant to general warrants and writs of assistance. (97 S.Ct. at 630)

In holding that a warrant should have been obtained before the entry was effected, the Supreme Court did not indicate or suggest any authority or procedure for the issuance of such warrants by any judicial officer.

The Internal Revenue Code provides for the assessment and collection of taxes by the Internal Revenue Service, an executive agency, without any need for a judicial enforcement proceeding. The applications which are now before me seek nothing more than the imprimatur of my judicial authority on the administrative actions of revenue officers, not merely to seize property in satisfaction of unpaid taxes but to enter and search private premises to effect such seizure.

I cannot provide that imprimatur if it is beyond the limited authority and jurisdiction of this Court to do so. The Supreme

556

Court in *G. M. Leasing, supra,* certainly implies that someone has jurisdiction to issue the kind of warrant here sought, but that opinion nowhere indicates the statutory source of the jurisdictional grant. The government relies on 26 U.S.C. § 7402(a), which is a grant of jurisdiction to the district courts to issue writs and orders in aid of the enforcement of the internal revenue laws. With all due respect to the contrary view of two circuits of the Court of Appeals, *United States v. Mellon Bank, N.A.,* 521 F.2d 708 (3d Cir. 1975) and *United States v. First National City Bank,* Civil Nos. 75–6007, 6008 (2d Cir., Feb. 4, 1977), I interpret the language of that statute as authorizing writs and orders only in the context of plenary civil proceedings, not in the context of an *ex parte* application. The issuance of an *ex parte* order allowing the invasion of a citizen's privacy in his home or business is by its very nature an extraordinary exercise of governmental authority. If Congress had chosen to vest that authority in the district courts or any other judicial tribunal for the purpose of facilitating collection of taxes, one would think that the jurisdictional grant would be more explicit than the general language of Section 7402 (a). Compare Fed.R.Crim.P. 41, which specifically grants authority to judges and federal magistrates to issue criminal search warrants.

■ Assuming, however, that Section 7402(a) or some other statute were sufficient to grant this Court jurisdiction, I do not think the applications presented here sufficiently comport with the requirements of the Fourth Amendment for issuance of a warrant.

First, the Fourth Amendment requires a showing of "probable cause" before a warrant can issue. In the context of enforcement of the criminal laws under Fed.R. Crim.P. 41 and 18 U.S.C. § 3103a, the concept of probable cause has been developed in an extensive body of case law. In the present context, however, what would constitute probable cause is much less clear. As Judge Gurfein lamented in *First National City Bank, supra,*

[T]he majority sustains the broad order below on the curious ground that "probable cause" was shown. But they do not tell us "probable cause" to believe what. (at 6152)

The government contends,

All that need be shown is that an assessment has been made, that the taxpayer has been given notice of the assessment, that a demand for payment has been made, that the taxpayer has refused or neglected to pay the tax, and that there is a factual basis for concluding that the premises to which entry is sought contains property that is subject to levy for the taxes due. (at 6, *Ichiban at Vail* memorandum)

Upon these grounds alone, I would be most reluctant in the absence of clear case authority to give blanket authority to federal tax officers to invade the privacy of these citizens.

■ Even if the above representations appearing in an affidavit could be sufficient to establish probable cause, the form of order tendered is itself clearly prohibited by the Fourth Amendment. I am asked to authorize revenue officers "to enter the premises described and to make such search as is necessary in order to levy and seize, pursuant to Section 6331 of the Internal Revenue Code of 1954." The only suggested limitation is that the entry shall be made during business hours or the daytime and within ten days of the order. The failure of the application and order to describe the things to be seized is a violation of the express language of the Fourth Amendment that no warrant shall issue without "particularly describing the place to be searched, and the persons or things to be seized."

■ Finally, assuming this Court did have jurisdiction to consider these applications and that the applications and forms of order did meet the basic requirements of the Fourth Amendment, I would be reluctant to issue such orders under the present procedural circumstances, wherein the taxpayers have been given no notice and no opportunity to contest the allegations of the affidavits submitted to this Court or the

legality of the orders requested. It is one thing to deprive a taxpayer temporarily of his property until a prompt post-seizure hearing can be held to determine entitlement to continued possession; it is altogether another thing to deprive a citizen of his right to privacy in his home or business premises without any pre-invasion opportunity to be heard. Unlike property, one's privacy cannot be returned intact if the government has overstepped its bounds.

The majority of the court in *First National City Bank, supra,* appears to justify the *ex parte* aspect of the procedure by recognition of a need for swift action, drawing an analogy to the issuance of criminal search warrants and stating, "The policies favoring expeditious tax enforcement procedures are as compelling as the need to effect a speedy search of a suspect's premises." (at 6147–48) In this regard, I think it significant that all the cases relied upon by the government involved apparently valid *jeopardy* assessments, whereas none of the cases before me present any indication that assets would be secreted or dissipated if the taxpayer were given the opportunity to contest the representations of the government prior to an entry and search. Indeed, where, as here, the law seems to be less than clear and still in a developing stage, justice is best served by the clash of an adversary proceeding. The facts of these cases as presented by the government simply do not justify an *ex parte* procedure. I cannot accept the analogy to the criminal search.

The government has urged the importance of the collection of taxes as the "life blood of government", citing *Bull v. United States,* 295 U.S. 247, 258, 55 S.Ct. 695, 79 L.Ed. 1421 (1965). I do not doubt it. Likewise, I do not doubt the importance to the English government of the efficient collection of taxes imposed upon the American colonists, aided by the writs of assistance issued from the Court of Exchequer and which gave rise to the famous argument of James Otis in these words which articulate the fundamental principle of law which was adopted in the Fourth Amendment:

Now one of the most essential branches of English liberty is the freedom of one's house. A man's house is his castle; and whilst he is quiet, he is as well guarded as a prince in his castle. This writ, if it should be declared legal, would totally annihilate this privilege.

Commager, Documents of American History, 46 (1948).

Upon the conclusions that these summary, *ex parte,* applications are beyond the jurisdiction of this Court and that the requested orders would be in violation of the fundamental freedoms protected by the Fourth Amendment, it is

ORDERED that each of these applications is denied.