**Darrell DAVIS d/b/a Davis Enterprises and Midwest Coal Corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 89–4224.**

United States District Court, S.D. Illinois.

March 8, 1991.

David T. Lumerman, St. Louis, Mo., for plaintiffs.

Robert Simpkins, Asst. U.S. Atty., East St. Louis, Ill., Mark Winer, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

FOREMAN, Chief Judge:

This is a suit to recover coal excise taxes paid by plaintiff Darrell Davis d/b/a Davis Enterprises (Davis Enterprises) for the first quarter of 1981 and by plaintiff Midwest Coal Corporation[1] (Midwest Coal) for the third quarter of 1986. Before the Court are cross-motions for summary judgment. The parties are in agreement over the facts surrounding this dispute. They disagree, however, whether these facts require plaintiffs to pay the coal excise tax.

Between 1914 and 1952, Peabody Coal Company operated a coal mine called the Harco Mine near Harrisburg, Illinois. The coal mined by Peabody at the Harco mine was never subject to the coal excise tax in question, since that tax became effective in 1978. *See* Pub.L. 95–227, § 2(a), 92 Stat. 11 (1978).

Davis Enterprises and, subsequently, Midwest Coal operated a coal reprocessing plant which extracted or reclaimed coal from coal waste refuse piles abandoned by Peabody Coal Company, including the Harco mine. In order to reclaim coal from the coal waste refuse piles, Davis Enterprises and Midwest Coal used a paddle wheel scraper to pick up the refuse, coal, gravel, dirt and other debris from the refuse piles and place this material into a large hopper. The material was then moved from the hopper by a conveyor belt through a crusher.

At the point where the crusher started working, water was poured on the coal. The coal and other materials were then dropped into a water solution. The heavier materials would drop through the bottom and the coal was then separated. After separation, the coal was dried, moved out of the plant, stored and made ready for shipment. This coal was sold primarily to power generating plants.

As part of the Black Lung Benefits Revenue Act of 1977, Congress imposed an excise tax "on coal from mines located in the United States sold by the producer...." 26 U.S.C. § 4121(a). The Act did not define who was a producer; however, regulations promulgated by the Secretary of Treasury state that "[t]he term includes any person who extracts coal from coal waste refuse piles or from the silt waste product which results from the wet washing (or similar processing) of coal." Treas. Reg. § 48.4121–1(a)(1) (1980)[2]; *see also* Treas.Reg. § 48.4121–1(a)(2) example 3 (1980). Davis Enterprises and Midwest Coal do not argue that their operation does not fall within this definition of producer. Rather, they argue that the regulation itself is invalid because it is inconsistent with the Black Lung Revenue Act.

The Secretary of the Treasury is authorized to promulgate all rules and regulations necessary for the enforcement of the Internal Revenue Code. 26 U.S.C. § 7805(a). The Supreme Court has indicated that these Treasury Regulations

> command our respect, for Congress has delegated to the Secretary of the Treasury, not to this Court, the task of "administering the tax laws of the Nation." We therefore must defer to Treasury Regulations that "implement the congressional mandate in some reasonable manner." To put the same principle conversely, Treasury Regulations "must be

---

1. Midwest Coal Corporation is the successor to Davis Enterprises.

2. These regulations are codified in title 26 of the Code of Federal Regulations.

sustained unless unreasonable and plainly inconsistent with revenue statutes." *Commissioner of Internal Revenue v. Portland Cement Co. of Utah,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981) [internal citations omitted].

■ In determining whether a particular Treasury Regulation implements the congressional mandate, a court should consider whether the regulation was written contemporaneously with the legislation, the length of time the regulation has been in effect, the reliance placed on the regulation, the consistency of Commissioner's interpretation, and the amount of attention Congress has devoted to the regulation in subsequent reenactments of the statute. *National Muffler Dealers Association v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979).

■ The regulation promulgated by the Secretary defines a producer as "the person in whom is vested ownership of the coal immediately after the coal is severed from the ground, without regard to the existence of any contractual arrangement for the sale or other disposition of the coal or the payment of any royalties between the producers and third parties." Treas. Reg. § 48.4121–1(a)(1) (1980). The regulation further explicitly includes an additional category of producers: those who extract coal from coal waste refuse piles or silt waste product. *Id.*

The rationale for this regulation was stated in a private letter ruling by the Secretary:

> Section 4121 was added to the Code by the Black Lung Benefits Revenue Act of 1977. It was enacted as a financing measure to provide revenue for black lung benefits paid by the federal government pursuant to Title IV of the Federal Mine Safety and Health Act of 1977. Title IV provides for benefits to be paid to coal miners and coal mine employees who are totally disabled due to pneumonicosis, or "black lung", that occurs as a result of employment in a coal mine or coal preparation facility. Generally, the employer is responsible for providing such payments, but in certain cases, such as when there is no responsible employer, the Act and the Internal Revenue Code provide for benefits to be paid to the disabled miner by the federal government through either the Secretary of Labor or the Secretary of Health and Human Services. *See* Federal Mine Safety and Health Act of 1977, section 411(a), 30 U.S.C.A. section 921(a) (Supp.1983); section 9501(d) of the Code. In order to provide a mechanism by which such payments could be financed, Congress enacted the Black Lung Benefits Revenue Act of 1977 which established a trust fund, called the Black Lung Disability Trust Fund, out of which the payments would be made. In addition, the Act added section 4121 of the Code, and provided for amounts to be appropriated to the trust fund equal to the taxes received in the Treasury under that section. *See* Black Lung Benefits Revenue Act of 1977, Pub.L. No. 95–277, section 3 (Feb. 10, 1978); 123 Cong.Rec. S. 19492 (daily ed. Dec. 15, 1977) (remarks of Sen. Long).

> Because section 4121 was added to the Code to provide revenue for black lung benefits paid pursuant to Title IV of [the] Federal Mine Safety and Health Act of 1977, it is [the Secretary's] position that the definitional language contained in the Act is relevant to the interpretation of the language in section 4121. More particularly, [the Secretary] feel[s] that if an employer's activities relating to the processing or production of coal render his employees eligible for black lung benefits under the Act in the event they later contract black lung, and render the employer potentially liable for the payment of such benefits, this should be viewed as support for finding that the employer's sales of coal produced from those activities are subject to the tax imposed by section 4121.

Pvt.Ltr.Rul. 8451016 (September 12, 1984) (copy attached as Plaintiff's Exh. F) [3].

---

**3.** The Internal Revenue Service District Director took essentially the same position in denying Davis Enterprises' claim for a refund. Notice of

Davis Enterprises and Midwest Coal argue that the tax imposed in § 4121 does not apply to all mines whose employees may be eligible for benefits under the Federal Mine Safety and Health Act of 1977. For example, § 4121 explicitly excludes lignite coal from the excise tax. However, miners of lignite coal are eligible for Black Lung benefits. *Consolidation Coal Co. v. McGrath*, 866 F.2d 1004, 1005 (8th Cir. 1989). Thus, plaintiffs argue, the definition of producer and mine in § 4121 is not co-extensive with the definitions in the Federal Mine Safety and Health Act of 1977.

The implicit assumption in plaintiffs' argument is that lignite coal was exempted from the excise tax because its mining does not create a high risk of black lung disease. The legislative history of this provision does not bear this assumption out. In explaining the provisions of the Black Lung Revenue Benefits Act, Senator Long simply stated that "[t]his tax does not apply to lignite, which is generally the softest and least expensive of the types of coal." 123 Cong.Rec. H19493 (December 15, 1977) (remarks of Sen. Long), *reprinted in* 1978 U.S.Code Cong. and Ad.News 72, 73. It is just as likely that lignite was exempted because the excise tax would make it too expensive as it is that lignite was exempted because it is "safe".

Plaintiffs make a similar argument with regard to the inclusion of coal extracted by auger. However, coal extracted by auger is not excluded from the tax. Rather, the inclusion of coal extracted by auger is in the definition of a surface mine. This provision clarifies that by boring a hole through the ground, one has removed all geological material before extracting the coal. Therefore, mining by auger should be taxed at the rate for surface mines.

The exclusion of lignite coal from the excise tax, and the taxation of coal extracted by auger at the surface mine rate do not make unreasonable the Secretary's conclusion that the definition of "producer" should be related to the Federal Mine Safety and Health Act.

Davis Enterprises and Midwest Coal also urge this Court to follow the holding in *Kanawha Dredging Minerals Company, Ltd. v. United States*, 88–1 USTC (CCH) ¶ 16,463, 1987 WL 49371 (D.W.Va.1987). The plaintiff in *Kanawha Dredging* produced coal by dredging the bed of the Kanawha River in West Virginia. Coal was separated from the other material dredged, and loaded on a barge, while the remaining material was returned to the river bottom. The coal at the bottom of the river was not the result of the weathering of hillsides or coal waste piles. Rather, at least 95% of the coal recovered by the plaintiff was spilled into the river during transport. Therefore, at least 95% of the coal recovered by the plaintiff had been subject to the coal excise tax.

The plaintiff in *Kanawha Dredging* was subject to the coal excise tax pursuant to a Technical Advice Memorandum issued by the Internal Revenue Service. The rationale of this private letter ruling was later adopted in Revenue Ruling 87–21. Rev. Rul. 87–21, 1987–1 C.B. 310 (1987). The Secretary felt that, "[s]ince X's dredging operations are analogous to coal waste reclamation operations, and since coal produced from reclamation operations is taxable at the rate prescribed in section 4121 of the Code for coal from surface mines, X's sales of coal are taxable at the rate prescribed for such coal." *Id.*

In holding that the coal salvaged in *Kanawha Dredging* is not subject to the tax imposed by section 4121, the court stated that it found Revenue Ruling 87–21 unpersuasive in its analogy to coal waste reclamation operations. Therefore, it appears that *Kanawha Dredging* implicitly recognized the validity of the regulations at issue here. *Kanawha Dredging* held that the extension of the regulation to include riverbed dredging operations was invalid, and no more.

Riverbed dredging operations are different from the coal extraction process used by Davis Enterprises and Midwest Coal. The coal recovered by riverbed dredging is coal which fell off barges travelling the

Disallowance of Claim, Sept. 12, 1988 (Plaintiff's     Exh. E).

river. This coal has already been subject to the coal excise tax. The coal in coal waste refuse piles has never been taxed. *See* Treas.Reg. § 48.4121(d)(4) (1980) (tax based on number of tons sold; coal left in waste piles has never been sold). Moreover, the riverbed dredging operation is a scavenging operation. Extracting coal from coal waste refuse piles is not scavenging since the coal is being extracted for the first time.

*Kanawha Dredging*, therefore, does not compel the conclusion that Treasury Regulation § 48.4121(a)(1) is invalid as applied to persons who extract coal from coal waste refuse piles. Moreover, the inclusion of such persons in the regulations defining "producer" is consistent with the language and congressional intent of section 4121.

Plaintiff's motion for summary judgment (Document 8) is DENIED; defendant's motion for summary judgment (Document 9) is GRANTED. The Clerk shall issue judgment accordingly.

IT IS SO ORDERED.