**Paul F. BELLOFF, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 1524, Docket 92–4010.

United States Court of Appeals, Second Circuit.

Argued May 13, 1992.

Decided June 23, 1993.

608

Emil Sebetic, Manhasset, NY, for petitioner-appellant.

Janice B. Geier, Attorney, Tax Div., Department of Justice, Washington, DC (James A. Bruton, Acting Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Attorneys, Tax Div., Dept. of Justice, Washington, DC, of counsel), for respondent-appellee.

Before: CARDAMONE, PIERCE, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner-appellant Paul F. Belloff appeals from a decision of the United States Tax Court, Charles E. Clapp II, *Judge,* entered October 18, 1991 that determined a deficiency in income tax due from Belloff for 1986 in the amount of $17,137, a penalty pursuant to 26 U.S.C. § 6653(a)(1)(A)[1] in the amount of $856.85, and penalty interest pursuant to § 6653(a)(1)(B). These determinations ensued from an opinion of the Tax Court, *Belloff v. Commissioner,* 62 T.C.M. (CCH) 274, 1991 WL 138571 (1991), whose primary ruling was that the Tax Court lacked jurisdiction to consider Belloff's claim that his overpayment of income tax for 1986 should be applied in discharge of that year's deficiency and penalties. The Tax Court premised this determination upon the prior application of the 1986 overpayment by the Commissioner of Internal Revenue (the "Commissioner") in setoff against an assessment for 1982 of

§ 6700 penalties against Belloff for the promotion of abusive tax shelters.

We conclude that the Tax Court had jurisdiction under § 6512(b) to determine Belloff's claim that his 1986 overpayment should have been applied to the 1986 deficiency and penalties. We affirm the decision of the Tax Court, however, rejecting Belloff's claim on the merits.

## Background

In June 1986, the Commissioner assessed penalties against Belloff (and others) for 1982, 1983, and 1984 pursuant to § 6700, relating to the promotion of abusive tax shelters. Belloff was assessed penalties of $141,750 for 1982, $473,917 for 1983, and $630,532 for 1984, a total of $1,246,199. In February 1987, after paying fifteen percent of a portion of the assessed penalties, *see* § 6703(c), Belloff instituted a refund action in the United States District Court for the Eastern District of New York contesting his liability under § 6700. *See In re Tax Refund Litig.,* 725 F.Supp. 140 (E.D.N.Y.1989) ("*Refund Litig. I*"), *appeal dismissed as moot,* 915 F.2d 58 (2d Cir.1990) (per curiam).

In October 1987, Belloff timely filed (after an extension) his federal income tax return for 1986. The return showed an overpayment and a request for refund in the amount of $18,370.76, representing the difference between the federal income tax withheld from Belloff's income, $28,140, and the total tax due as reported on his return, $9,769.24. On November 30, 1987, the Commissioner notified Belloff that his 1986 overpayment, *inter alia,* had been credited against his assessed § 6700 liability for 1982.

On December 21, 1988, the Commissioner issued a notice of deficiency to Belloff determining an additional tax liability of $17,137 for 1986 attributable to Belloff's failure to include on his 1986 tax return his liability for the alternative minimum tax. The deficiency notice also determined that Belloff was liable for negligence penalties on the resulting underpayment of tax: a five percent penalty on

---

1. Statutory references herein are to the Internal Revenue Code of 1986 (26 U.S.C.) as amended and in effect during the years at issue. The Code was designated as the Internal Revenue Code of 1954 prior to 1986, but was redesignated by the Tax Reform Act of 1986. *See* Pub.L. No. 99–514, § 2, 100 Stat. 2085, 2095 (1986).

the underpayment pursuant to § 6653(a)(1)(A) in the amount of $856.85, and fifty percent of the interest on the underpayment pursuant to § 6653(a)(1)(B) in the amount of $1,085.90.

On February 16, 1989, Belloff filed a petition for redetermination of the 1986 deficiency with the Tax Court. Belloff alleged that the Commissioner "[e]rroneously and unlawfully" applied the 1986 overpayment of $18,370.76 against the civil penalties assessed under § 6700 for 1982. While not disputing his liability for the alternative minimum tax of $17,137, Belloff claimed that the reported overpayment of $18,370.76 should have been used to offset the additional alternative minimum tax, and as a consequence he actually made a net *overpayment* of $1,233.76 for 1986. Belloff further claimed that because (1) his failure to declare liability for the alternative minimum tax was inadvertent rather than negligent, and (2) in any event, the underpayment of taxes asserted by the Commissioner (upon which the negligence penalties were calculated) resulted from the improper failure of the Commissioner to credit the 1986 overpayment against Belloff's alternative minimum tax liability, the negligence penalties were also improperly assessed. Belloff concluded by asking the Tax Court to determine that the Commissioner improperly applied the 1986 overpayment, and that Belloff had made a $1,223.76 overpayment for that year.

Meanwhile, in the district court action regarding the § 6700 penalties, Belloff challenged the authority of the Internal Revenue Service ("IRS") to undertake certain collection activities with respect to the § 6700 assessment, including the application to the 1982 assessment of his 1986 overpayment. *See Refund Litig. I,* 725 F.Supp. at 140–41. Belloff relied upon § 6703(c)(1), which provides that if a taxpayer timely pays fifteen percent of an asserted § 6700 liability and files a refund action in the appropriate district court, "no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution" of the district court action. Belloff argued that § 6703(c)(1) barred the IRS from setting off his 1986 overpayment against penalties for which he was only assertedly liable pending final resolution in the district court.

In a November 13, 1989 decision that relied primarily upon legislative history, the district court agreed with Belloff, ruling that the IRS could not apply any overpayment for other taxable years against the 1982 § 6700 assessment. *See Refund Litig. I,* 725 F.Supp. at 141–42. The court accordingly directed injunctive relief in behalf of Belloff, including the application of his 1986 overpayment to his 1988 estimated income tax rather than to the 1982 § 6700 penalties. 725 F.Supp. at 142.

On November 24, 1989, following the district court decision, the Commissioner filed a "partial" motion with the Tax Court to dismiss the petition in this case for lack of jurisdiction insofar as it challenged the application of the 1986 overpayment to the 1982 § 6700 penalties. The Commissioner urged that the district court where the § 6700 penalties were being litigated was the exclusive forum for resolving the application of the 1986 overpayment to the penalty assessments.

While that motion was pending before the Tax Court, on December 18, 1989, the United States appealed the district court's November 13, 1989 decision to this court. On January 3, 1990, the district court stayed its ruling pending resolution of the Commissioner's appeal on the condition that Belloff's 1986 overpayment be maintained in an interest-bearing escrow account. During the pendency of the appeal, however, on July 11, 1990, Belloff was found liable by a jury for the § 6700 penalties. The district court then vacated its outstanding order. *See In re Tax Refund Litig.,* 915 F.2d 58, 59 (2d Cir.1990) (per curiam) ("*Refund Litig. II* "). On September 11, 1990, this court dismissed the appeal of the United States from the district court's November 13, 1989 order as moot. *Id.*

The Tax Court then granted the Commissioner's "partial" motion to dismiss Belloff's petition in an opinion filed July 30, 1991, concluding that "[i]f [Belloff] has a claim respecting the application of the 1986 overpayment, he must seek it in another forum."

*Belloff,* 62 T.C.M. at 275. The court noted that the district court hearing the § 6700 refund case was the appropriate forum, and that the "Tax Court does not have subject matter jurisdiction to decide this issue." 62 T.C.M. at 275.

Based upon Belloff's conceded liability for the alternative minimum tax in the amount of $17,137 and apparent concession of liability for the § 6653(a)(1)(A) five percent negligence penalty, the court found Belloff liable for § 6653(a)(1)(B) penalty interest. 62 T.C.M. at 275. In doing so, the Tax Court rejected Belloff's claim that application of the $18,370.76 overpayment to the $17,317 tax liability and § 6653(a)(1)(A) penalty in the amount of $856.85 would leave no principal upon which to premise § 6653(a)(1)(B) penalty interest. 62 T.C.M. at 275.

An order was then entered by the Tax Court on October 17, 1991 granting the Commissioner's "partial" motion to dismiss for lack of jurisdiction, and a decision was entered on October 18, 1991 imposing liability upon Belloff for the $17,137 tax deficiency, the § 6653(a)(1)(A) penalty of $856.85, and § 6653(a)(1)(B) penalty interest. Belloff appealed to this court from that decision on January 7, 1992, in accordance with § 7483.

Belloff also appealed from the adverse district court determination in the § 6700 refund suit. That appeal was argued on April 9, 1992, and the appeal in this case was argued on May 13, 1992. We subsequently affirmed the district court's decision in the § 6700 refund action on Belloff's appeal; the district court determined Belloff's personal liability to be $9,667.00. *See In re MDL–731–Tax Refund Litig. of Organizers & Promoters of Inv. Plans Involving Book Properties Leasing (Barrister Assocs. v. United States )*, 989 F.2d 1290, 1296, 1305 (2d Cir. 1993) ("*Barrister Assocs.*").[2] We also affirmed as to a liability of Barrister Associates in the amount of $534,692.50. *Id.* As a general partner of Barrister Associates, Belloff is "jointly and severally liable to the full extent of [his] assets for any penalty imposed

upon the partnership." *In re Tax Refund Litig.,* 766 F.Supp. 1248, 1256 (E.D.N.Y.1991) (citing N.Y. Partnership Law §§ 24, 26 (McKinney 1988)); *see also Barrister Assocs.,* 989 F.2d at 1304.

### Discussion

Three issues are presented on this appeal:

(1) whether the Tax Court had jurisdiction over Belloff's overpayment claim;

(2) if jurisdiction was present, whether the IRS properly credited Belloff's 1986 overpayment to the outstanding 1982 § 6700 penalty assessment; and

(3) whether the Tax Court erred in holding Belloff liable for § 6653(a)(1)(B) penalty interest.

### A. *Jurisdiction.*

■ The Tax Court is a court of limited jurisdiction, and may only exercise such jurisdiction pursuant to a specific legislative enactment. § 7442; *Knapp v. Commissioner,* 867 F.2d 749, 753 (2d Cir.1989) (citing *Taylor v. Commissioner,* 258 F.2d 89, 93 (2d Cir. 1958)). The pertinent statute in this case is § 6512, which governs petitions to the Tax Court for the redetermination of a deficiency after notice of that deficiency by the Commissioner. The governing provision of § 6512 provides in pertinent part:

[I]f the Tax Court finds that there is no deficiency and further finds that the taxpayer has made an overpayment of income tax for the same taxable year ... in respect of which the Secretary determined the deficiency, or finds that *there is a deficiency but that the taxpayer has made an overpayment of such tax, the Tax Court shall have jurisdiction to determine the amount of such overpayment,* and such amount shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer.

---

**2.** We affirmed in part and reversed in part on a cross-appeal by the United States. *Barrister Assocs.,* 989 F.2d at 1304–05. The effect of the reversal, as to Belloff, was an increase in his personal liability for § 6700 penalties by includ-

ing in the gross income base of those penalties certain income-generating assets that he had transferred to his wife during the pendency of the IRS examination of his tax shelter activities. *See id.* at 1305.

§ 6512(b)(1) (emphasis added).[3]

■■■ We see nothing in this language to compel, or indeed support, the contention of the Commissioner that the application of an overpayment in satisfaction of a separate assessment for a different taxable year divests the Tax Court of jurisdiction with respect to that overpayment in addressing the taxable year for which the court's jurisdiction is invoked by a taxpayer petition. The Commissioner argues for a narrow reading of this provision. In our view, however, *any* plausible reading must yield the conclusion that the Tax Court is implicitly but unmistakably directed to determine the existence and amount of any overpayment for the taxable year brought before it for decision. The prior application of an overpayment to an assessment or liability for another taxable year would then be taken into account with respect to the mandate of § 6512(b)(1) that the overpayment "shall, when the decision of the Tax Court has become final, be credited or refunded to the taxpayer." Assuming that the prior application of the overpayment was legitimate, it would then be deemed to have been "credited" to the taxpayer within the meaning of the statutory mandate, and that credit would be a valid defense to any motion by the taxpayer for a refund of the overpayment pursuant to § 6512(b)(2). *See supra* note 3.

As will appear when we address the merits of the overpayment application in this case, this analysis should impose no practical burden or confusion in the administration of the tax laws. A valid IRS assessment will ordinarily provide a proper basis for the application of an overpayment in satisfaction of the assessment, so the Tax Court will not be obliged to weigh or determine the merits of the asserted liability underlying that assessment, and therefore will not be drawn into conflict with any other tribunal before which the validity of that assessment is being litigated. Further, the position adopted by the Tax Court and pressed by the Commissioner on this appeal would preclude any inquiry by the Tax Court even if the application of the overpayment by the IRS constituted a manifest and blatant error, and whether or not any litigation had been commenced elsewhere with respect to it. These considerations reinforce our view that a prior application of the overpayment to satisfy an independent assessment does not countermand the straightforward mandate of § 6512(b)(1) that the Tax Court "find[ ] ... [whether] the taxpayer has made an overpayment ... [and] determine the amount of such overpayment."

The Commissioner confronts this seemingly clear mandate with two arguments. The first of these contentions is premised upon § 6402(a), which authorizes the IRS to credit "any overpayment ... against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." This provision, the Commissioner maintains, operates to remove from the jurisdiction of the Tax Court any overpayment that is so credited against another tax liability. The short answer to this claim is that it is a *non sequitur.* It does not follow from the terms of § 6402(a) or § 6512(b)(1), or from any persuasive implication that can be derived from those provisions. Further, it is at odds with the statutory framework provided for the Tax Court's performance of its core functions.

Section 7422(e) provides the Tax Court with plenary jurisdiction over a taxable year with respect to which a petition is filed in response to an IRS notice of deficiency, specifying that if a refund suit is pending in the district court or the United States Claims Court regarding that taxable year, "the district court or the United States Claims Court, as the case may be, shall lose jurisdic-

---

**3.** In addition, § 6512(b)(2), added in 1988, *see* Technical and Miscellaneous Revenue Act of 1988 (the "Act"), Pub.L. No. 100–647, § 6244(a), 102 Stat. 3342, 3750, provides as follows:

> If, after 120 days after a decision of the Tax Court has become final, the Secretary has failed to refund the overpayment determined by the Tax Court, together with the interest thereon as provided in subchapter B of chapter

67, then the Tax Court, upon motion by the taxpayer, shall have jurisdiction to order the refund of such overpayment and interest.

This provision applies to "overpayments determined by the Tax Court which have not yet been refunded by the 90th day after the date of the enactment of [the] Act." *Id.* § 6244(c), 102 Stat. 3750. The Act was enacted on November 10, 1988. 102 Stat. 3812.

tion of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund." Section 6213(a), in language parallel to that of § 6703(c)(1) at issue in this action, bars (with exceptions not relevant here) any assessment, levy, or proceeding in court with respect to a tax that is the subject of a Tax Court proceeding until the decision of the Tax Court becomes final, and authorizes "the proper court, including the Tax Court," to enjoin such activity. Section 6214(b) empowers the Tax Court to "consider such facts with relation to the taxes for other years ... as may be necessary correctly to redetermine the amount of [the deficiency for the year at issue before the Tax Court], but in doing so, [the Tax Court] shall have no jurisdiction to determine whether or not the tax for any other year ... has been overpaid or underpaid."

These provisions, taken together with § 6512(b)(1), authorize the Tax Court definitively to determine the amount of any deficiency and overpayment for a taxable year brought before it by a taxpayer petition, and provide for the court to take into account any prior § 6402(a) application of that overpayment as a credit envisioned by § 6512(b)(1), but militate strongly against an interpretation that a prior § 6402(a) application of the overpayment divests the Tax Court of jurisdiction to perform its § 6512(b)(1) obligation to determine the amount of the overpayment. All the foregoing is subject to the § 6214(b) caveat that the Tax Court has no jurisdiction "to determine whether or not the tax for any other year ... has been overpaid or underpaid." As will appear, however, our resolution of the merits issue on this appeal avoids any significant conflict with this prohibition.

■ The Commissioner's second, and primary, argument on the jurisdictional issue is premised upon the apprehension that the § 6214(b) prohibition will in fact be violated; i.e., that the Tax Court's consideration of Belloff's claim of a 1986 overpayment will draw the Tax Court into conflict with the district court's authority to resolve the issues presented in the § 6700 refund suit. With regard to his 1986 overpayment claim, however, Belloff does not actually contest his

*liability* under § 6700. Rather, Belloff challenges the authority of the Commissioner to apply his overpayment against his § 6700 assessment *before a final determination of liability* by the district court. Hence, while Belloff raises arguments relating to his § 6700 liability, he does so only in the context of an asserted overpayment claim that falls squarely within the jurisdiction of the Tax Court.

Belloff presents at least a colorable claim that in cases under § 6700, the Commissioner lacks the § 6402(a) setoff authority that is generally available to the Commissioner with regard to other tax assessments. The resolution of this question is necessary to the determination of the overpayment issue. Thus, in order for the Tax Court to resolve the question of the 1986 overpayment, as § 6512(b)(1) plainly empowers it to do, the court was required to address the issue of the Commissioner's § 6402(a) authority to apply Belloff's 1986 overpayment to the 1982 § 6700 assessment.

■ Similarly, the contention that the district court's exclusive jurisdiction over the § 6700 refund action displaces Tax Court jurisdiction in this case is also misplaced. The question of Belloff's liability for those penalties is not at issue here, and was properly resolved in the district court litigation. Regardless of ultimate liability, however, the point in time when that liability arose sufficiently for the Commissioner to exercise his setoff authority is a separate question, with independent legal consequences.

We are not persuaded to a contrary view by *Morse v. United States,* 494 F.2d 876 (9th Cir.1974), cited to us by the Commissioner, or by *Shillman v. Commissioner,* 48 T.C.M. (CCH) 1483, 1984 WL 15206 (1984), *aff'd mem.,* 803 F.2d 721 (6th Cir.1986), and *White v. Commissioner,* 33 T.C.M. (CCH) 652, 1974 WL 2199 (1974), upon which both the Commissioner and the Tax Court rely. These cases were decided before the Tax Court was authorized in 1988, by the enactment of § 6512(b)(2), to order a refund of any overpayment, *see supra* note 3, and were substantially influenced by this limitation upon

the court's power to deal conclusively and comprehensively with overpayments.

The Commissioner points to a statement in *Morse* that the Tax Court "has no jurisdiction ... to resolve disputes as to a right to a refund that may hinge upon some contingency beyond mere overpayment. *Robbins Tire and Rubber Co., Inc.,* 53 T.C. 275, 279, 1969 WL 1678 (1969); *see Empire Ordnance Corp. v. Harrington,* 102 U.S.App.D.C. 14, 249 F.2d 680, 682 (1957)." *Morse,* 494 F.2d at 879. In *Robbins,* the Tax Court declined to decide whether the refund to the taxpayer of an agreed overpayment was barred by certain offers in compromise in view of the absence of any statutory authority for the Tax Court to order a refund. *See* 53 T.C. at 279. *Empire Ordnance* similarly noted the absence of any Tax Court jurisdiction to order the refund of an overpayment in the course of declining to mandamus the Commissioner to pay refunds that the Commissioner sought to offset against tax liabilities of corporations assertedly related to the litigating taxpayers. 249 F.2d at 681–82. Neither *Morse, Robbins,* nor *Empire Ordnance,* in our view, provides authority to deny the Tax Court jurisdiction to determine the existence and amount of Belloff's 1986 overpayment, especially in light of the intervening enactment of § 6512(b)(2).

In the opinion from which this appeal is taken, the Tax Court stated that Belloff's "overpayment has been applied to the 1982 penalty, and accordingly it is no longer a part of this proceeding. If petitioner has a claim respecting the application of the 1986 overpayment, he must seek it in another forum." 62 T.C.M. at 275 (citing *Shillman* and *White* ). Concededly, both *Shillman* and *White* declined to review the Commissioner's application of an overpayment to a year other than the one at issue before the Tax Court. With the enactment of § 6512(b)(2), *see supra* note 3, however, a taxpayer would now be entitled to move in the Tax Court for an order directing the refund of such an overpayment. It seems inescapable that the Commissioner would then be compelled to respond that the overpayment had been validly applied against another tax liability of the applicant taxpayer, and the Tax Court would have jurisdiction to resolve the dispute thus presented. We accordingly conclude that *Shillman* and *White* should not be fol-

lowed on this issue in the aftermath of the enactment of § 6512(b)(2).

In conclusion, we hold that the Tax Court should have exercised jurisdiction to determine whether Belloff made a 1986 overpayment, and if so, the amount of such overpayment. Having decided this uncontested issue, the court would then have been obliged to address the credit or refund of the conceded overpayment, and thus the issue whether the Commissioner properly applied the 1986 overpayment against the 1982 § 6700 assessment. We proceed to consider that question.

### B. *Application of the Overpayment.*

Although ordinarily our decision reversing the Tax Court's determination that it lacked jurisdiction would require a remand, because the remaining issues on appeal depend on questions of pure statutory construction that are subject to *de novo* review, we will proceed to the merits. *See In re Koreag, Controle et Revision S.A. (Koreag, Controle et Revision S.A. v. Refco F/X Assocs.),* 961 F.2d 341, 351 (2d Cir.) (citing *United States v. Borello,* 766 F.2d 46, 60 n. 23 (2d Cir.1985)), *cert. denied,* —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992).

■ When a taxpayer reports an overpayment on a federal tax return, § 6402(a) empowers the Commissioner to "credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." *See Kalb v. United States,* 505 F.2d 506, 509 (2d Cir.1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975). Section 6201(a) authorizes the Commissioner to assess taxes and assessable penalties. Liability for such tax or penalty arises upon its administrative assessment by the Commissioner. *See Bull v. United States,* 295 U.S. 247, 260, 55 S.Ct. 695, 699, 79 L.Ed. 1421 (1935) ("The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt."); *United States v. Whiting Pools, Inc.,* 674 F.2d 144, 159 (2d Cir.1982) (same) (quoting *Bull,* 295 U.S. at 259–60, 55 S.Ct. at 699),

*aff'd*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *see also* § 6203 ("The assessment shall be made by recording the *liability* of the taxpayer in the office of the Secretary [of the Treasury] in accordance with rules or regulations prescribed by the Secretary [emphasis added]."). Consistently, § 6155 provides the general rule that taxes must be paid upon notice and demand by the IRS, and § 6321 imposes a tax lien on all of a taxpayer's property upon failure to pay any tax upon demand. Accordingly, applying general tax principles, it would appear clear that the Commissioner was authorized to apply Belloff's 1986 overpayment against his 1982 § 6700 penalties upon assessment of those penalties, notice of which was sent to Belloff on June 23, 1986.

Belloff nevertheless advances two arguments why § 6402(a) does not permit a setoff in this case. His first contention is that § 6703(c)(1) prohibits the Commissioner from engaging in any collection activity with respect to the penalties assessed against Belloff pursuant to § 6700. Section 6703(c)(1) provides that if a taxpayer timely pays fifteen percent of an asserted § 6700 liability and files a refund action in the appropriate district court, as Belloff has done here, "no levy or proceeding in court for the collection of the remainder of such penalty shall be made, begun, or prosecuted until the final resolution" of the district court action.

The principle support for Belloff's position is found in the opinion of the district court in *Refund Litig. I,* which endorsed Belloff's argument that § 6703(c)(1) prohibits setoff by the Commissioner of a taxpayer's overpayment against an assessed § 6700 liability. The district court relied upon legislative history in reaching this conclusion, stating:

> The government argues that § 6703(c) is very explicit in only precluding levies and proceedings in court and that neither the setoffs nor notices of liens at issue here are levies or proceedings in court. However, the legislative history expressly provides that those assessed penalties for abusive tax shelters under § 6700 are entitled to the same procedural safeguards as income tax return preparers penalized under I.R.C. § 6694. While § 6694 uses the

same language as § 6703 precluding only levies and proceedings in court, the legislative history explains that one who pays 15% "may avoid *any further IRS collection* of the remaining 85% of the penalty" and that "the IRS may resume its *collection activities* only upon final resolution of the matter". H.R.Rep. No. 658, 94th Cong., 2d Sess. 280, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 3176 (emphasis added). *Accord* IRS Manual § (35)(18)(11) 3 Sub 4.

725 F.Supp. at 142 (emphasis added in *Refund Litig. I* ). Although the order premised upon this opinion was subsequently vacated following a jury determination in favor of the government, *see Refund Litig. II,* 915 F.2d at 59, Belloff urges us to adopt the reasoning of the district court's opinion.

An opposing view is expressed in *Sage v. United States,* 908 F.2d 18, 25–27 (5th Cir. 1990), and *Hankin v. United States,* 891 F.2d 480, 482–83 (3d Cir.1990). *Sage* affirmed a district court's denial of a motion to enjoin the collection of a § 6700 penalty by setoff. 908 F.2d at 25–27. In doing so, *Sage* concluded that setoff was significantly distinct from levy, relying upon Supreme Court cases importing different meaning to the terms "levy" and "setoff." *Id.* at 27 (*comparing United States v. National Bank of Commerce,* 472 U.S. 713, 720, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985) (levy is means by which IRS acquires possession of a taxpayer's property) *with United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947) (setoff is application of funds in government's possession against a taxpayer's outstanding tax liability)).

*Hankin* held that § 6703(c)(1) does not apply to a setoff, relying upon the separate and distinct meanings of "levy" and "setoff" as used in the Internal Revenue Code and Treasury regulations. 891 F.2d at 482–83. In particular, the court contrasted (*id.* at 483) the elaborate procedures that the IRS must follow in order to levy a taxpayer's property, *see, e.g.,* § 6331(d)(2) (levy may take place only upon ten days written notice); § 6334(a) (exempting certain property from levy); 26 C.F.R. § 301.6331–1 (1992) (regula-

tions pertaining to levy), with the broad power to apply overpayments to a taxpayer's unpaid assessments. *See* § 6402(a) (authorizing setoff of overpayments against any tax liability); 26 C.F.R. § 301.6402–1 (1992) (same). Moreover, Treasury regulations pertaining to wrongful levy expressly distinguish between levy and setoff. 26 C.F.R. § 301.7426–1(a)(1) (1992).

. ■ We agree with *Sage* and *Hankin.* Section 6703(c)(1) by its terms only applies to a "levy" or a "proceeding in court." We believe that this language is sufficiently clear that resort to legislative history is unwarranted. *See Connecticut Nat'l Bank v. Germain,* —— U.S. ——, ——, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). Under the tax laws, "levy" and "setoff" mean two different things. Congress did not see fit to include setoff in § 6703(c)(1), and there is no justification for our expanding the plain meaning of the statute. Accordingly, § 6703(c)(1) does not restrict the Commissioner's setoff power as granted in § 6402(a).

■ Belloff's second argument challenging the setoff is that § 6402(a) only permits application of an overpayment against any tax "liability," but that § 6700 "liability" may only be determined by the district court. Thus, at the time of the setoff, Belloff contends, there was no § 6700 "liability" against which his overpayment could be set off. This argument is premised upon § 6703(c)(2), which describes a district court action regarding § 6700 penalties as a "*proceeding . . . for the determination of [a taxpayer's] liability* [emphasis added]" for such penalties.

As is clear from our prior discussion, this position is countermanded by the scheme of assessment under the Internal Revenue Code, pursuant to which an assessment has the binding force of a judgment to establish an immediate liability against a taxpayer. *See Bull,* 295 U.S. at 260, 55 S.Ct. at 260; *Whiting Pools,* 674 F.2d at 159; § 6203. Thus, we believe that the use of the term "liability" in § 6703(c)(2) was not intended to set aside this firmly established statutory design with respect to § 6700 penalties, but rather simply to specify that (as in all other refund suits) the ultimate liability for such

penalties is to be adjudicated in district courts. Accordingly, for the purposes of a § 6402(a) setoff, liability for a § 6700 penalty arises at the time the penalty is assessed, in accordance with familiar and settled principles.

This interpretation is buttressed by the consideration that if no liability for § 6700 penalties could arise and provide a basis for collection activity prior to a final district court determination of the question, the protective provisions of § 6703(c)(1) would be superfluous. Section 6402(a) authorizes a setoff against any "liability." Similarly, the power to levy on a taxpayer's property arises when the taxpayer is "liable" to pay any tax. § 6331(a). If the use of the term "liability" in § 6703(c)(2) operated to preempt these provisions and thus preclude the operation of the Commissioner's levy power, the stay provision of § 6703(c)(1) would be redundant. We decline to read the statute in this way. *See Hassan v. Fraccola,* 851 F.2d 602, 604 (2d Cir.1988) (statute should be interpreted to avoid surplusage) (citing *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1044 (2d Cir.1985)). Rather, we believe that by incorporating into § 6703 a procedure for staying certain collection activities (and not others), the statute impliedly permits, in the absence of a stay, the assessment and collection of § 6700 penalties in accordance with the operation of the general provisions of the tax code. Although the ultimate determination of Belloff's § 6700 liability was properly made by the district court, the obligation to pay the § 6700 penalties arose at the time of assessment, and the Commissioner was authorized to credit Belloff's overpayment against that liability.

We note, finally, that our disposition of the merits of this issue, premised upon the general rule that a § 6402(a) assessment provides a proper basis for the application of a tax overpayment without regard to the ultimate determination of the validity of the IRS legal position underlying the assessment, precludes (at least as a general matter) conflict between the Tax Court and other courts resulting from our jurisdictional ruling in this case. The Tax Court will be required to determine only the straightforward question

whether a valid assessment exists, *see, e.g., Johnson v. United States*, 990 F.2d 41, 43 (2d Cir.1993) (assessment made before Tax Court's decision became final invalid under § 6213(a)), and will not address the merits of the legal issues underlying the assessment. Indeed, § 6214(b), which provides that the Tax Court "shall have no jurisdiction to determine whether or not the tax for any other year [than the one brought before it by a taxpayer's petition] ... has been overpaid or underpaid," precludes any broader inquiry.

### C. Negligence Penalties.

Belloff concedes his liability for the § 6653(a)(1)(A) penalty, which is five percent of an "underpayment" that is due to "negligence or disregard of rules or regulations." He contests, however, his liability for § 6653(a)(1)(B) penalty interest, which is:

> an amount equal to 50 percent of the interest payable under section 6601 with respect to the portion of such underpayment which is attributable to negligence for the period beginning on the last date prescribed by law for payment of such underpayment (determined without regard to any extension) and ending on the date of the assessment of the tax (or, if earlier, the date of the payment of the tax).

§ 6653(a)(1)(B) (emphasis added).[4]

The parties proffer various contentions regarding this issue with respect to the definition of "underpayment" in § 6653(c) and the impact upon this issue of other provisions of the tax code regarding the payment of interest on tax liabilities. Belloff concedes, however, that his argument is premised upon the assumption that the Tax Court erred in sustaining the Commissioner's application of Belloff's 1986 overpayment to the assessment of 1982 § 6700 penalties. Because we have sustained the Tax Court's ruling (although not its underlying rationale) on that issue, it follows that we also affirm that court's ruling on the § 6653(a)(1)(B) issue.

### Conclusion

 Although we disagree with aspects of the Tax Court's opinion in this case, appeal is taken from the court's decision, *see* § 7483, with which we have no quarrel. We may affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds on which the court from which the appeal is taken did not rely. *See Citrus Mktg. Bd. of Israel v. J. Lauritzen A/S*, 943 F.2d 220, 223 (2d Cir.1991) (collecting cases). Further, as has been wisely said, " 'The law needs to be precise, but it should not travel in circles.' " *Shanker v. United States*, 571 F.2d 8, 10 (8th Cir.1978) (quoting *Transport Mfg. & Equip. Co. v. Commissioner*, 480 F.2d 448, 451 (8th Cir.1973)). We accordingly affirm the decision of the Tax Court.

---

4. The continuing controversy between the parties as to Belloff's liability for the § 6653(a)(1)(B) penalty precludes any contention that this appeal became moot when *Barrister Assocs.* determined that Belloff is liable for § 6700 penalties far in excess (taking into account his liability as a general partner for the liability of Barrister Associates) of the 1986 overpayment whose application to assessed § 6700 penalties is at issue in this case.