T.C. Memo. 2016-128

UNITED STATES TAX COURT

GONZALO LUQUE AND MARIBEL LUQUE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10712-14.                          Filed July 7, 2016.

Ps filed a 2011 return, which R processed in May 2012, that showed an overpayment of income tax due to overwithholding from wages. According to documentation R submitted, as of April 15, 2012, Ps' overpayment for 2011 was credited against their 2009 tax liability. R then determined a deficiency in Ps' 2011 income tax, which he now concedes. R moved for entry of decision that there is no deficiency due from, nor any overpayment due to, Ps for 2011. Ps moved for entry of decision that they are due a refund of the amount overwithheld for 2011.

<u>Held</u>: Because R established that the crediting of the overpayment shown on Ps' 2011 return as of the due date of that return was consistent with established practice, the documentation that R submitted is reliable evidence that the overpayment was, in fact, credited.

<u>Held</u>, <u>further</u>, because I.R.C. sec. 6402 allows for the crediting of refunds shown on a return before a final determination of the

[*2] taxpayer's tax liability for the year covered by the return, Ps' 2011 overpayment was credited against their 2009 tax liability "under" I.R.C. sec. 6402, and, consequently, the Court has no jurisdiction to review the propriety of the credit. See I.R.C. sec. 6512(b)(4).

Shahin Rahimi, for petitioners.

Emerald G. Smith, for respondent.

MEMORANDUM OPINION

HALPERN, Judge: Respondent determined a deficiency in petitioners' 2011 Federal income tax of $4,771. Respondent conceded the only adjustment leading to his determination of that deficiency, and the case is before us on respondent's and petitioners' competing motions for entry of decision (motions). The parties agree that there is no deficiency in income tax due from petitioners for 2011, and respondent moves for entry of decision to that effect. Petitioners, however, move for entry of a decision that they overpaid their 2011 income tax by $4,223. That amount is the difference between the amount of income tax withheld from petitioners' 2011 wages and the amount of tax shown on their 2011 return. Respondent apparently agrees that petitioners' 2011 return correctly stated their tax liability for that year, and he does not dispute the amount claimed as withheld.

**[*3]** Instead, respondent alleges that he credited the $4,223 overpayment shown on petitioners' 2011 return against their assessed but not fully paid 2009 income tax liability and that the credit reduces their 2011 overpayment to zero. Respondent also argues that section 6512(b)(4) denies this Court jurisdiction to review the propriety of the credit. Petitioners argue, first, that respondent failed to demonstrate that the credit of the overpayment shown on their 2011 return against their 2009 tax liability actually occurred. In addition, petitioners argue that, because their 2011 income tax liability has not yet been finally determined, any credit of their 2011 overwithholding that actually occurred was not made "under section 6402". Consequently, according to petitioners, section 6512(b)(4) does not prevent this Court from reviewing the propriety of the credit. On the premise that they had no deficiency for 2009 against which their 2011 overwithholding could be properly credited, petitioners ask that we determine an overpayment of $4,223 for 2011.

On March 29, 2016, we issued an order concerning the motions in which we addressed and rejected petitioners' jurisdictional argument. We, did not, however, dispose of the motions. Instead, we ordered respondent to address seeming anomalies between his representations and entries on the official records he submitted in support of his motion. Because there may be general interest in

**[*4]** respondent's reconciliation of those seeming anomalies (a reconciliation we accept), we use this opportunity to make that reconciliation public. For completeness, we begin by including from our order our reasons for rejecting petitioners' argument that section 6512(b)(4) does not deny us jurisdiction to review the propriety of respondent's credit of their 2011 overpayment against their liability assessed for 2009.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 2011.

## Background

When a taxpayer files a return for a taxable year that shows payments of tax in excess of tax liability, instead of refunding the indicated overpayment to the taxpayer, the Commissioner may instead credit the amount of the overpayment against the taxpayer's tax liabilities for other taxable years. Sec. 6402(a). The Commissioner's crediting of a refund for one year against a tax liability for another year does not prevent the Commissioner from later determining a deficiency for the year from which the refund arose. Savage v. Commissioner, 112 T.C. 46, 48-49 (1999). If the taxpayer then files a timely petition with this Court, we "have jurisdiction to redetermine the correct amount of the deficiency". Sec. 6214(a). If we find "that there is no deficiency and * * * that the taxpayer has made an

[*5] overpayment of income tax" for the year before us, we "have jurisdiction to determine the amount of such overpayment" and order that that amount "be credited or refunded to the taxpayer." Sec. 6512(b)(1). In determining the existence and amount of any overpayment, we must take into account the extent to which the Commissioner previously credited any overpayment shown on the taxpayer's return for the year before us against the taxpayer's tax liability for another year. See Belloff v. Commissioner, 996 F.2d 607, 612-613 (2d Cir. 1993), aff'g T.C. Memo. 1991-350.

Although, in exercising our jurisdiction under section 6512(b) for a taxable year before us, we must take into account any prior credits allowed by the Commissioner under section 6402(a) from that year to another year, our jurisdiction does not extend to weighing the merits of the assessed liability against which the credit was applied. As the Court of Appeals for the Second Circuit wrote in Belloff v. Commissioner, 996 F.2d at 612: "A valid IRS assessment will ordinarily provide a proper basis for the application of an overpayment in satisfaction of the assessment, so the Tax Court will not be obliged to weigh or determine the merits of the asserted liability underlying that assessment". Congress later codified the Court of Appeals' decision in Belloff by adding to the Code section 6512(b)(4), which provides: "The Tax Court shall have no

**[*6]** jurisdiction under this subsection to restrain or review any credit or reduction made by the Secretary under section 6402." As we explained in <u>Winn-Dixie Stores, Inc. v. Commissioner</u>, 110 T.C. 291, 294 (1998): "Section 6512(b)(4) restricts our jurisdiction in two situations. First, we may not restrain or prevent respondent from reducing a refund by way of credit or reduction pursuant to section 6402. Second, we may not review the validity or merits of any reduction of a refund under section 6402 after such reduction has been made by respondent." But while we may not "review the validity or merits" of a credit in the sense of evaluating the position underlying the assessment against which the credit was allowed, the exercise of our jurisdiction under section 6512(b) still requires that we verify that the credit was in fact allowed against an assessed liability.

Petitioners argue that any application of the overpayment shown on their 2011 return against their tax liability for 2009 was not made "under" section 6402(a) and that, consequently, our ability to review that allowance is not limited by section 6512(b)(4). Section 6402(a) allows for the granting of a credit for "the amount of * * * [an] overpayment" and, petitioners argue, an "overpayment" for a year cannot exist until a final determination of the taxpayer's liability for that year is made. We disagree with the premise of petitioners' argument. Section 6402(a) applies to the crediting of refunds shown on a return even before any final

[*7] determination of the taxpayer's tax liability for the year covered by the return. In Savage v. Commissioner, 112 T.C. at 48-49, for example, we concluded that, after relying on section 6402(a) to apply a taxpayer's overpayment for one year against the taxpayer's liability for another year, "the Commissioner is not precluded from subsequently determining a deficiency for the taxable year in respect of which the overpayment was originally claimed and allowed." See also sec. 301.6402-3(a)(5) and (6), Proced. & Admin. Regs. (allowing a refund shown on a return to be credited under section 6402 against any outstanding tax liability of the taxpayer). Obviously, if the Commissioner can still determine a deficiency for the taxable year that generated the credit, the overpayment initially credited under section 6402(a) cannot have been based on a final determination of the taxpayer's tax liability for that year. Therefore, we accept that section 6512(b)(4) limits our ability to review respondent's crediting of the overpayment shown on petitioners' 2011 return against any liabilities assessed for 2009. But we do not read section 6512(b)(4) to prevent us from verifying, in the exercise of our jurisdiction under section 6512(b)(1), that the credit respondent professes to have made was actually applied. To the extent that petitioners are asking us to go further and evaluate the liability against which respondent claims to have applied their 2011 refund, we decline to do so. Petitioners' 2009 taxable year is not before

**[\*8]** us, and section 6512(b)(4) prevents us from considering their liability for that year.  To the extent that petitioners are arguing that, even if respondent did credit their 2011 overpayment against an assessed liability for 2009, their overpayment for 2011 is not reduced, we reject that argument as unsupported by the law.  See, e.g., Belloff v. Commissioner, 996 F.2d at 612-613.

Petitioners do, however, raise valid questions about respondent's application of the credit in issue.  Those questions deserve answers.  Respondent claims that, under his section 6402(a) authority, he credited the overpayment petitioners reported on their 2011 return as an offset against a liability they owed for 2009.  In support of that claim, respondent submitted certified copies of Internal Revenue Service Form 4340, Certification of Assessments, Payments, and Other Specified Matters, for each of petitioners' taxable (calendar) years 2009 and 2011 (2009 Form 4340 and 2011 Form 4340, respectively).  On the 2011 Form 4340, the entry "Return filed & Tax Assessed" appears next to the date April 15, 2012.  The assessment date, however, is shown as May 21, 2012.  The 2011 Form 4340 also shows excess withholding of $4,223 and, on April 15, 2012, an overpayment credit transfer of that same amount to petitioners' 2009 tax year account.  The 2009 Form 4340 shows an overpayment credit of $4,223 from 2011 applied on April 15, 2012.

**[*9]** Respondent alleged in his motion, however, that "[p]etitioners filed their 2011 tax return late, and respondent processed the return on May 21, 2012." Petitioners fairly ask how respondent could have credited the overpayment shown on their 2011 return to their 2009 account before processing that return. Moreover, because petitioners' 2011 return would have been timely if filed on April 17, 2012 (April 15 having fallen on a Sunday and April 16 having been a holiday in the District of Columbia), if they filed their return late, as respondent alleged, the 2011 Form 4340 on which he relies would show the crediting of the reported overpayment as having occurred even before petitioners filed their return.

Although the question of <u>whether</u> the overpayment reported on petitioners' 2011 return was credited to their 2009 account is more important than precisely <u>when</u> that credit was allowed, the ambiguity in the dates on the certifications (i.e., Forms 4340) respondent submitted called into question the reliability of respondent's certifications as evidence that the credit was, in fact, allowed. Because of the questions raised by respondent's certifications, we did not view them as adequate, of themselves, to substantiate respondent's claim that he applied the overpayment shown on petitioners' 2011 return against the liability assessed for 2009. We therefore ordered respondent to address the ambiguity regarding the timing of the alleged credit in relation to the filing and processing of petitioners'

**[\*10]** 2011 return. Respondent has done so (respondent's response), and we will describe his response.

## Discussion

Respondent's Response

Respondent begins by stating (correctly) that section 6402 allows him to credit an overpayment against a taxpayer's liabilities for other taxable years.

He then addresses the procedures for applying an overpayment credit.

1. For the purposes of the application of the overpayment credit, the overpayment is considered available for offset on its availability date, which is determined by the payments constituting the overpayment. See Internal Revenue Manual (IRM) pt. 20.2.4.3.1 (Sept. 3, 2010).

2. In accordance with section 6513(b), the Internal Revenue Service (IRS) credits withholding to a taxpayer's account on the date the tax return for that year is due. The credits are applied as of the due date, without regard to any extension of time to file and whether the return is filed timely or late. Id.

3. Therefore an overpayment comprising prepayment credits, such as withholding, is available to be used as an offset as of the date the return is due, even if the return is filed or processed after the due date. This benefits the

[*11] taxpayer, as the payment will be applied to the account with a liability at an earlier date, preventing some interest accrual.

With respect to petitioners' 2011 tax year, respondent contradicts his earlier claim that petitioners filed their 2011 return late. He explains that, because petitioners' 2011 overpayment of $4,223 resulted from excess withholding for that year, it was a "prepayment" credit, available to respondent to offset petitioners' 2009 tax year debt as of April 15, 2012, even though petitioners' 2011 return was not processed until a later date.

Respondent adds that, in processing returns, even when the last day for filing a return is a Saturday, Sunday, or legal holiday (without distinction, holiday), so that returns filed on the next day that is not a holiday are considered timely, the IRS considers those deemed timely returns as filed on the day on which, without extension, they were due. IRM pt. 3.30.123.2.2 (2) and (3) (Jan. 1, 2010). For that reason, the due date will appear as April 15 in IRS systems even for years in which the due date is extended because of holidays. That, respondent explains, allows the IRS to avoid reprogramming all of its systems for every year in which a holiday extends the time to file returns.

Respondent supports his response with the declaration of Kindra White, an Appeals officer who worked on petitioners' case and who, by her declaration,

[*12] explains how to interpret the 2011 integrated data retrieval system (IDRS) transcript and another IDRS transcript (2009 IDRS transcript) that accompanied respondent's response. In pertinent part, Ms. White states the following.

1. The IRS uses the IDRS to keep track of the activity on taxpayers' accounts, including assessments and payments.

2. In the IDRS, every transaction entry includes a "posted date" and a "cycle number."

3. The "posted date" reflects the effective date of the transaction. While this is sometimes the date when the transaction was physically processed, that is not always the case. For example, prepayment credits will have a "posted date" of the return due date, even if the actual payments were received by the IRS before the due date of the return because prepayments of income tax are considered paid "on the last day prescribed for filing the return under section 6012 for such taxable year. I.R.C. § 6513(b)(1) [sic. (2)]; Baral v. United States, 528 U.S. 431 (2000)."

4. The "cycle number" indicates when during the calendar year the transaction was processed. This number reflects a three-step process in the IDRS. The first step is the "release of the transaction." This is when the transaction is ready to be posted in the system. In the second step, the "posted transaction appears on IDRS." At this point the transaction is pending in the system and

[*13] subject to change. The third step is "assessment or scheduled date." At this step the transaction will be officially posted to the account. The date of this third step will be the "posting date" for any entry which does not otherwise have a designated effective date.

Ms. White attached to her declaration a list of the cycle numbers for 2012, with their corresponding dates. According to that list, the cycle number 201219 corresponds to a transaction officially released by May 2, 2012, appearing on the IDRS by May 7, 2012, and posted by May 21, 2012.

In her declaration, she states that IDRS transcripts also contain transaction codes, indicating the type of transaction entered into the system. She states that the following transaction codes appear on the IDRS account transcripts for petitioners' 2009 and 2011 tax years:

      a. 150--Return filed;

      b. 806--Credit for withholding;

      c. 826--Overpayment transferred to another account; and

      d. 706--Overpayment applied from another tax year.

Finally, Ms. White states that, on petitioners' 2009 and 2011 IDRS account transcripts, the same cycle number, 201219, appears for the "Return filed", "Credit for withholding", and the two "Overpayment" transactions (i.e., a $4,223

**[\*14]** overpayment transferred from petitioners' 2011 tax year account and applied to their 2009 tax year account). This indicates to her that they were processed during the same timeframe. The posting dates on the IDRS account transcripts for these transactions are different, she explains, because they have different effective dates. The posted date for Code 150 (return filed) for petitioners' 2011 return is May 21, 2012,[1] while the posted date for the rest of the transactions is April 15, 2012.

Relying on Ms. White's declaration, respondent argues in his response that there was a refund offset of $4,223 from petitioners' 2011 tax year to their 2009 tax year and that (for reasons previously discussed) we do not have jurisdiction to review the merits of the credit transfer or petitioners' liability for their 2009 tax year, against which respondent applied the refund offset.

Analysis

We agree with respondent. Section 6072(a) provides in pertinent part that, in the case of a joint return of income made with respect to a calendar year, the return shall be filed on or before April 15 of the following year.

---

[1]It is a source of confusion that the description for Code 150--"return filed"--apparently refers to the act of processing petitioners' 2011 tax return, while the same term "return filed", as used on the 2011 Form 4340, means the date on which, given the sec. 7503 extension of time to file a return due on a holiday, a timely return will be considered filed.

**[*15]** Section 7503 provides in pertinent part: "When the last day prescribed under [the] authority of the internal revenue laws for performing any act falls on [a] Saturday, Sunday, or a legal holiday, the performance of such act shall be considered timely if it is performed on the next succeeding day which is not a Saturday, Sunday, or a legal holiday."

Section 6513(b)(1) provides in pertinent part that, for purposes of the period of limitations on making a claim for refund or credit of an overpayment of tax, tax withheld on wages of a calendar year taxpayer is deemed to have been paid by him on April 15 of the year following the year for which the withholding was made. In Baral, the Supreme Court made clear that remittances of withholding wage taxes are "paid" on the due date of a calendar year taxpayer's income tax return and not on the date the return is filed or the resulting tax is assessed.

In May 2012, when respondent processed petitioners' 2011 Federal income tax return, it appeared to respondent that petitioners had made a $4,223 overpayment of 2011 income tax resulting from excess wage withholding for 2011. The withheld tax was deemed paid by petitioners on April 15, 2012, and, as of that date, respondent credited the apparent $4,223 overpayment shown on petitioners' 2011 return against an assessed liability of petitioners for 2009, which reduced petitioners' 2011 overpayment to zero. As explained by respondent, and

**[*16]** as borne out by the statute, it is immaterial that respondent did not process petitioners' 2011 return until May 2012.  It is also immaterial that petitioners may have filed their 2011 return late, sometime after April 17, 2012, and before May 21, 2012 (which respondent now disclaims).  In short, the documentation respondent submitted establishes that petitioners' $4,223 overpayment of 2011 tax was in fact credited against their 2009 tax liability.  For the reasons explained above (and in our prior order), section 6512(b)(4) denies us jurisdiction to review the propriety of that credit.

Conclusion

We will deny petitioners' motion for entry of decision, grant respondent's motion for entry of decision, and, accordingly, enter a decision that there is no deficiency in tax and no refund due for 2011.

An appropriate order and decision will be entered.