Halpern, J., dissenting: I. Introduction Respondent has moved for summary adjudication that, in computing the amount of a gift, a donee’s promise to pay the additional Federal and State estate taxes that might arise by virtue of the application of section 2035(b) does not constitute adequate and full consideration in money or money’s worth within the meaning of section 2512(b). As respondent makes clear in replying to petitioner’s response to his motion: “Respondent is challenging the nature of the consideration in this motion, * * * not the fair market value of that consideration”. Because it is only the nature of the consideration that respondent is challenging, I agree with Judge Lauber that the discussion of the “too speculative” theory is unnecessary at this stage of this case. I further agree with him that it is at this time improper to consider overruling McCord v. Commissioner, 120 T.C. 358 (2003), rev’d and remanded sub nom. Succession of McCord v. Commissioner, 461 F.3d 614 (5th Cir. 2006), insofar as it embraces that theory. I do believe that we should grant respondent’s motion on the ground that allowing a reduction of an otherwise taxable transfer by an actuarial estimate of the value of the estate tax that might result because of the application of section 2035(b) is inconsistent with Congress’ purpose in enacting section 2035(b). II. Some Background Congress enacted the predecessor of section 2035(b) to mitigate in part a disparity between the tax bases subject to the gift tax and the estate tax, respectively. The gift tax base is “tax exclusive”, while the estate tax base is “tax inclusive”. Thus, assume a wealth transfer tax system that, from the first dollar, taxes all gratuitous transfers of wealth at a single rate, say 45%. Under such a system, the $15 million taxable estate of a decedent (let’s call her “mother”) will bear a tax of $6,750,000, which will leave $8,250,000 to distribute to the decedent’s heir (daughter). The tax base against which the hypothetical 45% flat-rate estate tax is applied is inclusive of the tax to be paid, so that the whole of mother’s taxable estate, whether going to daughter or going to the tax collector, is subject to that 45% flat-rate estate tax. On the other hand, if, before she died, mother decided to rid herself of her $15 million by making a gift to daughter, she could, from $15 million, make a gift of $10,344,828, paying a gift tax of $4,655,172. Daughter would receive $2,094,828 more, and the tax collector would receive an equal amount less, than either would receive were mother to let the $15 million pass through her estate to daughter. The reason for the difference in result is that the gift tax base excludes the tax to be paid, so that only the amount of the gift is taxed, while the estate tax base includes the amount of tax to be paid. Congress was fully aware of the disparity in the transfer tax bases applicable for the gift tax and the estate tax when it enacted the predecessor of section 2035(b). See H.R. Rept. No. 94-1380, at 11-12 (1976), 1976-3 C.B. (Vol. 3) 735, 745-746. It chose to mitigate that disparity only with respect to gifts made within three years of death. Id. The mitigation mechanism is the so-called section 2035(b) gross-up rule, by which any gift tax paid on gifts made within three years before death is added to the gross estate. The report of the Committee on Ways and Means puts it this way: “This ‘gross-up’ rule will eliminate any incentive to make deathbed tranfers [sic] to remove an amount equal to the gift taxes from the transfer tax base.” H.R. Rept. No. 94-1380, supra at 12, 1976-3 C.B. (Vol. 3) at 746. The section 2035(b) gross-up rule accomplishes Congress’ purpose by subjecting any gift made within the statutory period to taxation exactly as it would have been taxed had the transferred amount been part of the decedent’s gross estate. Thus, assume that mother had opted for a lifetime transfer, paying $4,655,172 in gift tax and making a gift to daughter of $10,344,828. Assume further that mother dies within three years of making the gift. Section 2035(b) would include in her gross estate the $4,655,172 paid in gift tax, which, assuming that her taxable estate equaled her gross estate, would attract an estate tax of $2,094,828. The sum of the prior gift tax paid by mother, $4,655,172, and the current estate tax borne by her estate, $2,094,828, equals $6,750,000, which is exactly what it would have been had mother made no gift and died possessed of $15 million.[1] Moreover, dying penniless (she either paid in tax or gave to daughter all of her $15 million), mother’s estate would have no funds to bear the estate tax, which, pursuant to section 6324(a)(2), would be borne by daughter, who, in effect, would have to return $2,094,828, to the estate to pay the estate tax, reducing daughter’s net benefit received from mother to $8,250,000, as shown supra note 1. That sum, $8,250,000, is exactly the sum that she would have received had mother made no lifetime gifts and had she named daughter sole beneficiary of her estate. Of course, if mother survives her gifts by more than three years, the more lenient gift tax result prevails. If mother opts for a lifetime transfer, she has two choices with respect to paying the resulting $4,655,172 gift tax: She can pay the tax herself, giving daughter a straight gift of $10,344,828, or she can make what the opinion of the Court describes as a net gift, giving daughter $15 million on the condition that daughter pay the $4,655,172 gift tax. Whether mother chooses to make a straight gift or she chooses to make a net gift, the amount of of the gift tax is the same, as is the amount of mother’s gift to daughter. Put generally, the proposition is that, in the case of a donor with a given sum of pretax wealth out of which she would like to make the maximum gift, the calculation of the maximum gift and the determination of the resulting gift tax is the same whether the donor intends a straight gift or a net gift. The calculation need not be difficult. The donor with some gross amount, G, wishing to determine the net amount, N, that, after paying tax at rate t, will, along with the tax, add up to G, can express her problem as follows: N + tN = G This equation can be restated as: N (1 + t) = G and restated again as:[2] N = G/(l + t) Thus, setting G equal to $15 million, N is $10,344,828, and by subtracting N from G, the gift tax is $4,655,172. The procedure described is solely about determining how much one can give away under a tax-exclusive gift tax at rate t. It is also useful to illustrate that, at any positive tax rate, t, and for any gross amount, G, the amount that can be given by gift, G/( 1 + t), will always exceed the amount that can be transferred at death, G (1 - t).[3] III. Donee’s Agreement To Pay Section 2035(b) Liability Now let us suppose that mother, having opted for a lifetime transfer, transfers to daughter the whole $15 million, obligating daughter to pay the resulting gift tax and, further, making her promise to pay the estate tax that will result on account of section 2035(b) if mother should die within three years of making the gift. Has the calculus of the gift and the resulting gift tax changed? Certainly not because of daughter’s obligation to pay any gift tax, but what about because of her promise to pay any estate tax? An actuarial value can be assigned to that obligation. Petitioner’s attorney and her appraiser have written an article setting forth a method for valuing a donee’s obligation to pay the estate tax resulting from a section 2035(b) gross-up. Michael S. Arlein & William H. Frazier, “The Net, Net Gift”, 147 Tr. & Est. (Arlein & Frazier) 25 (2008). They assume an 85-year-old donor, transferring $15 million to her son, the donee, on December 31, 2007, who, in addition to agreeing to pay the gift tax, agrees to pay any estate tax resulting from any section 2035(b) gross-up. They call the arrangement a net, net gift. Calculating an estate tax of $2,214,990, and taking into account mortality and present value factors, they assign a value of $700,515 to the donee’s obligation to pay the estate tax. Dividing $700,515 by $2,214,990, I calculate a discount factor of 31.63%, which, for convenience, I will adopt for my calculations. So, if the net, net gift form is respected, the net amount of mother’s lifetime transfer to daughter would be calculated by subtracting from the $15 million the actuarial value of daughter’s obligation to pay the estate tax liability resulting from a section 2035(b) gross-up. The calculation of the potential section 2035(b) liability is somewhat complex, because it is dependent on the amount of the gift tax (which determines the potential section 2035(b) liability), which, in turn, is dependent on the actuarial value of daughter’s obligation to pay that liability. A good idea of how the relevant calculations are done can be obtained from Arlein & Frazier, supra, at 31 (“Valuing the IRC Section 2035(b) Liability”). If the net, net gift form is respected, I calculate that, on the transfer of $15 million to daughter (subject to her obligation to pay any resulting section 2035(b) liability), the resulting net, net gift and net, net gift tax would be $9,907,198 and $4,458,239, respectively. The section 2035(b) gross-up amount would be $4,458,239 (the gift tax paid), giving rise to $2,006,208 of potential estate tax. Taking 31.63% of that amount results in an actuarial value of $634,563 for daughter’s obligation to pay that tax. The gift tax savings from the net, net gift would be $196,933.[4] If mother should die within three years of making the gift, the estate tax savings would be $88,620.[5] The total transfer tax savings should she die within three years would be $285,553.[6] Those savings seem fundamentally at odds with Congress’ purpose in enacting section 2035(b); i.e., to eliminate incentives to make deathbed transfers. Daughter’s agreement to pay the estate tax resulting from a section 2035(b) gross-upis different in kind from her agreement to pay the gift tax. The latter obligation is a definite, fixed obligation to pay a tax that is presently due. When mother gives to daughter both a gift and the money to pay the gift tax, the economic and tax consequences are no different than had mother held on to the tax money and paid the tax herself. Moreover, whether mother or daughter pays the gift tax has nothing whatsoever to do with the amount of the gift\ Daughter’s obligation to pay the estate tax is something else entirely. It is not an obligation to pay a tax that is presently due. Indeed, it is an obligation to pay an estate tax liability that might or might not eventually come due. It is, in essence, daughter’s promise to return to mother’s estate that portion of a gift that must be paid to the tax collector if it turns out that the gift was, in effect, mistakenly subject to the lenient (tax-exclusive) gift tax rules when it should have been subject to the stricter (tax-inclusive) estate tax rules. If daughter has to return a portion of the gift to mother’s estate in order to pay the estate tax, both daughter and the estate are in exactly the same positions with respect to the sum of gift tax and the estate tax in which they would be had mother died with an estate equal to the sum of the gift and the gift tax paid, which estate she had left entirely to daughter.[7] If the estate tax due from mother’s estate on a taxable estate of $15 million left to daughter is $6,750,000,[8] a lifetime transfer of $15 million to daughter subject to her obligation to pay the gift tax and any estate tax resulting from a section 2035(b) gross-up should, if section 2035(b) is serving its purpose, produce a gift tax that, when added to the estate’s potential section 2035(b) liability, equals $6,750,000. As the calculations above illustrate, that will not be so if the net, net gift form is respected.[9] Congress enacted section 2035(b) to impose estate taxation on more leniently taxed lifetime gifts when the transferor dies within three years of making the gift. Allowing the transferor to assimilate the potential section 2035(b) liability into the net-gift rubric allows the transferor to render more lenient the gift taxation (if no section 2035(b) liability arises) and the estate taxation (assuming that it does arise) of the transfer. That seems an obvious subversion of Congress’ purpose in enacting section 2035(b). Indeed, allowing the donor of a gift to reduce an otherwise taxable transfer by an actuarial estimate of the estate tax resulting from a section 2035(b) gross-up that may never occur has the perverse effect of incentivizing deathbed transfers. If mother believes that she has only months to live, then if section 2035(b) is working as Congress intended, the imminence of death (and the resulting estate tax) should not be an incentive for her to make a deathbed transfer, since the transfer tax burden on $15 million should be the same whether she immediately gives $15 million to daughter or lets it pass through her estate. If, on the other hand, making a net, net gift to daughter will reduce both the gift tax and, if she should die as expected, the resulting estate tax, then there is an incentive to make a deathbed transfer. That cannot be what Congress intended when it enacted section 2035(b). Nor should the conclusion change if mother had wealth in excess of $15 million that formed part of her taxable estate and that would have borne part of the section 2035(b) liability had daughter not agreed to bear that liability pursuant to the net, net gift arrangement. If mother’s wealth exceeded $15 million, the transfer tax savings to the estate on account of the net, net gift arrangement would be the same; only the incidence of the reduced estate tax would shift from someone else to daughter. IV. Conclusion If it succeeds, the net, net gift arrangement certainly reduces the gift tax attendant to a fixed dollar transfer, and, if the donor dies within the prescribed period, it also reduces the estate tax resulting from a section 2035(b) gross-up. I find it hard to believe that in enacting the predecessor of section 2035(b) to disincentivize deathbed gifts, Congress intended not only to encourage a contrary result but also to allow all gift-givers to bootstrap themselves into a better position with respect to the gift tax than they would be in if no section 2035(b) liability ever has to be paid. The following table shows the gift tax and the equivalency between a lifetime gift subject to a sec. 2035(b) gross up and solely a testamentary transfer. Estate tax Estate tax (sec. Gift tax (no prior gifts) 2035(b) applies) Wealth $15,000,000 $15,000,000 $15,000,000 Gift tax 4,655,172 4,655,172 Estate tax 6,750,000 2,094,828 Total transfer taxes 4,655,172 6,750,000 6,750,000 Wealth to donee/heir 10,344,828 8,250,000 8,250,000 The procedure is elaborated on in Rev. Rul. 75-72, 1975-1 C.B. 310. The amount that can be given by gift, (?/(l + t), will always exceed the amount that can be transferred at death, G (1 - t), since: G/( 1 + t) > G[l-1) <=> 1 > 1-1[2] The following table compares a gift (or a net gift) to a net, net gift. Gift tax Net, net gift tax Difference Wealth $15,000,000 $15,000,000 Sec. 2035(b) obligation 634,563 Net transfer 15,000,000 14,365,437 Gift tax 4,655,172 4,458,239 [1]$196,933 Gift 10,344,828 9,907,198 Wealth to donee/heir 10,344,828 10,541,761 [2] -196,933 Reduction in the amount of the gift tax. Increase in the amount of wealth to donee/heir. The following table compares the estate tax for a straight gift (or a net gift) to the estate tax for a net, net gift. Net, net estate tax Estate tax (sec. (sec. 2035(b) 2035(b) applies) applies) Difference Sec. 2035(b) gross-up $4,655,172 $4,458,239 Estate tax 2,094,828 2,006,208 [1]$88,620 Reduction in amount of estate tax. The following table compares the total transfer taxes for a straight gift (or a net gift) to the total transfer taxes for a net, net gift. Estate tax (sec. 2035(b) applies) Net, net estate tax (sec. 2035(b) applies) Difference Wealth $15,000,000 $15,000,000 Estate tax 2,094,828 2,006,208 $88,620 Gift tax 4,655,172 4,458,239 196,933 Total transfer taxes 6,750,000 6,464,447 [1]285,553 Wealth to donee/heir 8,250,000 8,535,553 [2]-285,553 Transfer tax savings. Increase in the amount of wealth to donee/heir. Indeed, petitioner’s attorney and her appraiser in their article state: It’s important to note that under most circumstances the donee’s assumption of the IRC Section 2035(b) liability does not actually increase the donee’s tax exposure. If the donee is the residuary beneficiary of the donor’s estate and the donor’s will directs that all estate taxes be paid out of the residue, the Section 2035(b) liability would be borne by [the] donee regardless of his assumption of the liability pursuant to the net gift agreement. Likewise, in the absence of a direction under the donor’s will, most state tax apportionment statutes would allocate the Section 2035(b) liability to the donee. [Michael S. Arlein & William H. Frazier, “The Net, Net Gift”, 147 Tr. & Est. 25, 33 (2008); fn. ref. omitted.] See supra note 1. See supra note 6.